THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>ANGEL PEREZ-OTERO,<br>    Defendant. | Crim. No. 21-474 (ADC) |

**OPINION AND ORDER**

Before the Court is defendant Ángel Pérez-Otero's ("Pérez-Otero" or "defendant") motion to dismiss the indictment. **ECF No. 1**. The United States of America ("government") filed an opposition in response (**ECF No. 48**) and defendant filed a reply (**ECF No. 49**). For the following reasons, the Court **DENIES** defendant's motion to dismiss.

**I.      Background**

On December 8, 2021, a grand jury returned a four-count indictment against Pérez-Otero on charges of conspiracy, bribery, and extorsion under 18 U.S.C. §§ 371, 666(a)(1)(B) and (2), and 1951, respectively. **ECF No. 3** at 2-6.[1] According to the indictment, as Mayor of the Municipality of Guaynabo, Puerto Rico, Pérez-Otero sought and received bribes and kickbacks in the form of cash payments from an individual referred to as "Individual A" in exchange for awarding and maintaining public contracts in favor of "Company A."

---

[1] Count Four of the indictment is a forfeiture allegation under 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C) conditioned on the conviction of Pérez-Otero under the preceding counts.

More specifically, Count One of the indictment (Conspiracy; Federal Funds Bribery and Kickbacks, 18 U.S.C. § 371) chargew Pérez-Otero with conspiring to "benefit and enrich himself by accepting bribes and kickbacks from Individual A in exchange for securing municipal contracts for Company A as opportunities arose." *Id.*, at 3. Specifically, the indictment charges that Pérez-Otero would "regularly meet in secret" with "Individual A" to receive bribes and kickbacks, and that, "in exchange," he would take "steps benefitting Individual A and his business, Company A, including advising, pressuring, and directing municipal officials to ensure that Company A was awarded municipal contracts in Guaynabo and was paid pursuant to those contracts." *Id.* The overt acts alleged to have been taken in furtherance of the conspiracy were described as follows:

> 14. From late 2019 through May 2021, defendant PEREZ-OTERO received and accepted $5,000 cash payments on a regular basis from Individual A.
>
> 15. In exchange for these payments, PEREZ-OTERO agreed to award, facilitate, and protect contracts for Company A. PEREZ-OTERO continually reassured Individual A that he would obtain and retain contracts for Company A and ensured that Company A's invoices were promptly paid.

*Id.*, at 4. The indictment also alleges that Pérez-Otero and Individual A took steps to "conceal and disguise their corrupt scheme, such as meeting in secret locations, communicating in coded text messages, and using cash for bribe and kickback payments." *Id.*, at 3.

Count Two (Federal Program Bribery/Aiding and Abetting, 18 U.S.C. §§ 666(a)(1)(B) and (2)) and Count Three (Extorsion Under Color of Law, 18 U.S.C. § 1951) largely track the elements of the statutes under which the charges are brought. Under Count Two, however, the indictment

further specified that Pérez Otero received "three individual $5,000 cash payments" as bribes. **ECF No. 3**, at 5.

An arrest warrant was issued for Pérez-Otero on December 8, 2021, and he was arrested the next day. On December 20, 2021, after an initial appearance, Pérez-Otero entered a plea of not guilty. **ECF No. 14**. Several procedural developments not relevant here followed, and Pérez-Otero filed a motion to dismiss on January 9, 2023. **ECF No. 30**. In support, Pérez-Otero argues that the indictment against him must be dismissed for failure to allege an essential element of the crimes he is charged with and for failure to establish criminal liability. Specifically, he argues that "the evidence provided by the government, during discovery, clearly suggests that the payments took the form of campaign contributions." *Id.*, at 1. Therefore, according to Pérez-Otero, the indictment fails to allege an essential element of the crimes under *McCormick v. United States*, 500 U.S. 257 (1991), that is, that an explicit or express agreement or *quid pro quo* took place between him and Individual A.[2] *Id.*, at 6. He also argues that the indictment fails to charge him with any crime for the same reason. *Id.*, at 7.

The government filed its opposition on February 10, 2023. **ECF No. 49**. There, it argued that the indictment does not charge Pérez-Otero with receiving campaign contributions, but "cash bribes and kickbacks." *Id.*, at 4, 6-7. It further argues that even if it did, under *McCormick*

---

[2] In his motion to dismiss, defendant identified Individual A as "Oscar Santamaria." **ECF No. 30**, at 1.

and *Evans v. United States*, 504 U.S. 255 (1992), the agreement or *quid pro quo* need not be expressly stated, but rather, explicit, and that the indictment complies with this standard. *Id.*, at 7-10.

In arguing so, the government stated that it was "well aware that Individual A paid [Pérez-Otero's] campaign debt (believed to be approximately $70,000) from the 2017 special election and the government specifically did not include the repayment of this debt within the scope of the conspiracy or either substantive count of the indictment." *Id.*, at 7. Based upon this statement, defendant sought leave to file a reply (**ECF No. 49**) and tendered the reply as an exhibit (**ECF No. 49-1**), wherein, departing from his dismissal theory, he argued that the government's statement amounts to a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), because the "existence of a long-standing politician-donor relationship, the extent of which was well known and documented by the government, constitutes exculpatory evidence…." **ECF No. 49-1**, at 3. Defendant also accuses the government of "variance" and requests that it be given a copy of the transcript of Individual A's testimony before the grand jury. *Id.*, at 3-4.

Trial is set to begin on March 13, 2023. **ECF No. 32**.

## II. Legal Standard

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged"—though an indictment's "count[s] may allege that the means by which the defendant committed the offense are unknown." Fed. R. Crim. P. 7(c)(1). "An indictment need not say much to satisfy these requirements—it need only outline

'the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense.'" *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018) (quoting *United States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011)). Thus, "an indictment that tracks a statute's terms is legally sufficient if the indictment itself gives the defendant adequate notice of the charges she must meet." *Id.* Moreover, "[t]he government need not recite all of its evidence in the indictment." *Id*. (alteration in original) (citation and internal quotation marks omitted).

When reviewing a defendant's motion to dismiss an indictment, the reviewing court "must not inquire into the sufficiency of the evidence underlying the indictment," rather, the court must consider "'whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" *Id*. (quoting *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012)). In doing so, "courts take the facts alleged in the indictment as true…" and "routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) (*citing Guerrier*, 669 F.3d at 4). A "technically sufficient indictment handed down by a duly impaneled grand jury is enough to call for trial of the charge on the merits." *Id.* (citations omitted).

III. **Analysis**

   A. **Sufficiency of the Indictment**

Pérez-Otero's challenge to the indictment rests on a very specific ground: that the government failed to allege the existence of an express or explicit agreement or *quid pro quo*

between him and Individual A. Pérez-Otero relies exclusively on the Supreme Court's holding in *McCormick v. United States*, 500 U.S. 257 (1991) and on the Southern District of New York's opinion and order applying *McCormick* in *United States v. Benjamin*, 21-CR-706 (JPO), 2022 WL 17417038 (S.D.N.Y. Dec. 5, 2022) ("*Benjamin*").[3]

In *McCormick*, the Supreme Court reversed a court of appeals' affirmance of a defendant's conviction for extorsion under color of official right pursuant to the Hobbs Act, 18 U.S.C. § 1951 (the same statute under which Pérez-Otero is charged in Count Three of the indictment). In doing so, it drew a distinction between payments received by an elected official in the form of campaign contributions and other forms of payments. In the former context, the Supreme Court held that campaign contributions are "vulnerable under the [Hobbs] Act as having been taken under color of official right, but **only if** the payments are made in return for an explicit promise or undertaking by the official to perform or not perform an official act." 500 U.S. at 273 (emphasis added). Thus, an explicit *quid pro quo* became necessary "for a conviction under the Hobbs Act when an official receives a campaign contribution." *Id.*, at 274. Turning to the jury instruction at issue, the Supreme Court found it impermissible that the trial court instructed the jury to convict "if any of the payments, even though a campaign contribution, was made… with the expectation that McCormick's official action would be influenced for [the payors'] benefits and if McCormick knew that the payment was made with that expectation." *Id.*

---

[3] Pérez-Otero admits as much in a footnote in his motion to dismiss. **ECF No. 30** at 2.

In *Benjamin*, the District Court for the Southern District of New York dismissed at the pretrial stage three counts of an indictment which purported to accuse the defendant of bribery under 18 U.S.C. § 666(a)(1)(B) and other charges related to the defendant's solicitation and receipt of campaign contributions. *Benjamin*, at *1, 4. It reasoned that, under the *McCormick* standard and Second Circuit case law, the indictment needed to not just "track the language of each relevant statute, but also to explicitly allege any implicit element of each statute." *Id.*, *13. Although *McCormick* dealt with jury instructions, the District Court in *Benjamin* found that the indictment only alleged facts that consisted of "phrases that gesture toward an agreement," and thus failed to meet *McCormick's* "explicitness" requirement:

> "An indictment relying on an implicit statutory element must allege it explicitly. To do so, it follows that the government must directly state the implicit element—or a direct synonym for it—in the indictment. 'In exchange for' is not synonymous with explicit or express…. [T]he existence of an exchange or agreement does not necessarily imply the existence of an explicit or express agreement. The use of 'exchange' was thus insufficient to fully apprise the grand jury of a necessary element…."

*Id.*, at *14 (internal citation and quotation marks omitted).[4]

---

[4] Even though *McCormick* applies to prosecutions for extorsion under color of official right under the Hobbs Act, 18 U.S.C. § 1951, some courts have also considered it applicable to prosecutions for federal bribery under 18 U.S.C. §§ 666(a)(1)(B). *See, e.g.*, *United States v. Siegelman*, 640 F.3d 1159, 1170 (11th Cir. 2011) (applying *McCormick's* explicit promise requirement to 18 U.S.C. §§ 666(a)(1)(B)); *United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993) ("Given the minimal difference between extortion under color of official right and bribery, it would seem that courts should exercise the same restraint in interpreting bribery statutes as the *McCormick* Court did in interpreting the Hobbs Act.").

Whatever the merits of the Southern District of New York's reasoning in *Benjamin*—which relies on Second Circuit precedent[5] and is currently under appeal[6]—the Court is reluctant to find at this juncture that this case, and *McCormick* by extension, is at all applicable to the indictment here. As a threshold matter, a careful reading of the indictment against Pérez-Otero shows that the government did not charge him with soliciting, demanding, accepting or receiving a campaign contribution. On the contrary, under Count Two (Federal Program Bribery/Aiding and Abetting, 18 U.S.C. §§ 666(a)(1)(B) and (2)), it unambiguously charges Pérez-Otero with:

> …corruptly solicit[ing], demand[ing], accept[ing], and agree[ing] to accept for his own benefit, things of value from Individual A, **to wit: three individual $5,000 cash payments**, with the intent of being influenced and rewarded in connection with any business, transaction, and series of transactions of Guaynabo valued at $5,000 or more as opportunities arose, that is, municipal contracts.

**ECF No. 3**, at 4-5. The foregoing stands in stark contrast with the indictment before the court in *Benjamin*:

> "…BRIAN BENJAMIN, the defendant, being an agent of the government of the State of New York… corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, something of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the State of New York involving something of value of $5,000 and more, **to wit, BENJAMIN solicited and received campaign contributions** from CC-1 intending to be influenced in connection with

---

[5] *See, Benjamin*, at *15 ("Bound by guidance from the Second Circuit, the Court concludes that Counts One, Two, and Three of the Indictment must be dismissed for failure to charge an essential element.").

[6] *See, United States v. Migdol (Benjamin)*, Case No. 22-3091 (2nd Cir. Dec. 5, 2022).

BENJAMIN' s use of official authority and influence to obtain the State Grant for Organization-1.

Superseding Indictment at 18, *United States v. Brian Benjamin*, 21-CR-706 (JPO) (S.D.N.Y Apr. 12, 2022), ECF No. 18 (emphasis supplied). This fundamental difference alone is enough to dispel any notion that the reasoning in *Benjamin*, and by extension, *McCormick*, controls the outcome here.

The same conclusion applies to Count Three (Extorsion Under Color of Official Right, 18 U.S.C. § 1951) of the indictment, because it likewise does not allege that Pérez-Otero committed extorsion in exchange for campaign contributions. *See*, **ECF No. 3**, at 5 ("…PEREZ-OTERO, obtained property not due to him or his office as a public official, from Individual A…."). That is enough to make *McCormick* facially inapplicable. The Court cannot thus conclude that the indictment against Pérez-Otero, on its face, alleges bribery and extorsion in the form of campaign contributions.

In addition, absent any mention or reference to campaign contributions in the indictment, it would be highly improper for the Court to dismiss it based on Pérez-Otero's naked proffer that "the evidence provided by the government, during discovery, clearly suggests that the payments took the form of campaign contributions." **ECF No. 30**, at 1. *See also*, **ECF No. 49-1**, at 1 ("[T]he evidence discovered by the prosecution indicates the contrary."), 2 ("[T]he evidence provided by the prosecution during discovery process indicates…. The evidence also shows that…. Therefore, the evidence shows that…."), and 3 ("The evidence is contrary to the

allegations included in the indictment; therefore, the indictment must be dismissed."). Unlike *McCormick*, this case is in a pretrial stage and no evidence has yet been presented to the jury, which has yet to be impaneled. Whether any such evidence ultimately used by the government "shows" anything close to what Pérez-Otero alleges is a matter for the jury to determine.

The proper role of this Court, when faced with a motion to dismiss an indictment, is to "take the facts alleged in the indictment as true, mindful that 'the question is… solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" *Ngige*, 780 F.3d at 502 (*citing Savarese*, 686 F.3d at 7). It is not, as Pérez-Otero suggests, to weigh the evidence exchanged in discovery and determine whether it supports the charges against him.

"[A]n indictment that tracks a statute's terms is legally sufficient if the indictment itself gives the defendant adequate notice of the charges she must meet." *Stepanets*, 879 F.3d at 372 (citing authorities). Here, Counts Two and Three of the indictment, which serve as the predicate offenses for the conspiracy charge in Count One, largely track the elements of the statute. The indictment adequately informs Perez-Otero that he is charged for receiving **cash payments** from Individual A, **not campaign contributions**. *See*, **ECF No. 3** at 3, ¶ 11 ("In exchange for cash payments…"), 4, ¶ 14 ("…Pérez-Otero received and accepted $5,000 cash payments…"), and 5-6, ¶ 17 ("…PÉREZ-OTERO… did corruptly solicit, demand, accept, and agree to accept for his own benefit… three individual $5,000 cash payments…."). Therefore, the Court finds that the indictment survives Pérez-Otero's sufficiency challenge.

Whether or not the facts alleged in the indictment meet the *McCormick* standard, as applied to 18 U.S.C. §§ 666(a)(1)(B), 666 (a)(2), and 1951, is irrelevant at this stage because the indictment does not allege bribery or extorsion in the form of campaign contributions.[7] Pérez-Otero's "attempt to sink a facially valid indictment with a motion to dismiss that targets the strength of the government's *evidence*" must necessarily fail. *Guerrier*, 669 F3d at 4 (emphasis in original). Whether the government's evidence will be enough for a jury to convict him of the charges in the indictment is a matter for the jury to decide. Pérez-Otero is not entitled to a pre-trial dismissal of the indictment based solely on his one-sided appreciation of the strength of the evidence against him.

For the foregoing reasons, the motion to dismiss at **ECF No. 30** is **DENIED**.

### B.  Pérez-Otero's *Brady* and *Giglio* Allegations

Pérez-Otero replied to the government's opposition to his motion to dismiss. **ECF No. 49** and **49-1**.[8] The Court considered the reply and finds that Pérez-Otero raises the prospect of potential *Brady* and *Giglio* violations based on the government's disclosure of allegedly exculpatory evidence in its opposition to the motion to dismiss. *See*, **ECF No. 49-1** at 3 ("The existence of a long-standing politician-donor relationship, the extent of which was well known

---

[7] The government strongly asserts that the indictment would nonetheless meet the *McCormick* standard. *See*, **ECF No. 48**, at 7-10.

[8] Defendant's motion for leave to file a reply at **ECF No. 49** is **GRANTED** and the reply at **ECF No. 49-1** is considered filed.

and documented by the government, constitutes exculpatory evidence that should have been provided to the defendant under *Brady* and also potential impeachment material under *Giglio*.").

Defendant asserts that documents disclosed during discovery (related to potential campaign contributions) constitute *Brady* or *Giglio* material. Under *Brady*, the government must disclose evidence favorable to the defendant in a timely manner. *See, United States v. López-Soto*, 960 F.3d 1, 12 (1st Cir. 2020). Under *Giglio*, the government's duty under *Brady* is extended to "information potentially useful in impeaching government witnesses," and its withholding may "violate due process if the evidence is material to guilt or punishment." *United States v. Misla-Aldarondo*, 478 F.3d 52, 63 (1st Cir. 2007). Pursuant to this Court's order at **ECF No. 32**, all such materials must be produced to the defense at least 5 business days prior to trial, which is set to begin on March 13, 2023.

The government certified in a joint motion filed on February 3, 2023, that it handed over said materials on January 27, 2023. **ECF No. 39**, at 1.[9] Further, in a pretrial conference held on March 1, 2023, the government represented to the Court that it has and continues to produce discovery to defendant related to the alleged campaign contributions out of an abundance of caution—even when these may or may not be required under *Giglio*. As per the parties' agreement during said pretrial conference, they will meet once more before trial to go over the

---

[9] The Court's order at **ECF No. 32** also encompasses materials to be disclosed under *Jencks*, which refers to the Jencks Act, 18 U.S.C. § 3500, and *Jencks v. United States*, 353 U.S. 657 (1957). *See, United States v. Rodríguez-Torres*, 939 F.3d 16, 32 n.10 (1st Cir. 2019). Although no *Jencks* issue was raised by Pérez-Otero in his reply, the Court notes that the government also certified that it had produced *Jencks* materials to defendant. **ECF No. 39**, at 1.

materials and clarify any doubts the defense may have as to the government's disclosures. Since discovery appears to have been timely produced for defendant to analyze and utilize as deemed proper at trial, Pérez-Otero's request at **ECF No. 49-1** is **DENIED**.[10]

## IV.   Conclusion

Pérez-Otero's motion to dismiss the indictment erroneously assumes that the words "campaign contribution" are included in the indictment, when they are clearly not. The Court declines Pérez-Otero's invitation to rewrite the indictment and read something into it that is simply not there.

For the foregoing reasons, the Court **DENIES** Pérez-Otero's motion to dismiss the indictment at **ECF No. 30**. The Court **GRANTS** Pérez-Otero's motion for leave to file a reply at **ECF No. 49** and the tendered reply at **ECF No. 49-1** is deemed as filed, but the Court **DENIES** the additional relief there requested.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 28th day of February, 2023.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

[10] Finally, Pérez-Otero's claim of "variance" in his reply, which is tied to his *Brady* and *Giglio* argument, is a non-starter. "A variance occurs when the crime charged remains unaltered, but the evidence adduced at trial proves different facts than those alleged in the indictment." *United States v. Chan*, 981 F.3d 39, 52 (1st Cir. 2020) (cited by Pérez-Otero himself in his reply). There has been no trial here, much less any evidence adduced to. And, as discussed in this Opinion and Order, Pérez-Otero has had ample notice that he is being charged for receiving cash payments, not campaign contributions as he claims, so there is no indication of any prejudice due to "inadequate notice of the charges against him." *Id.* His claim of variance has no merit.