## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

v.

ANGEL PEREZ-OTERO,

    Defendant.

Crim. No. 21-474 (ADC)

### <u>OPINION AND ORDER</u>

On March 6, 2024, defendant Ángel Pérez-Otero ("Pérez-Otero") filed a motion for release pending appeal of the 63-month sentence of imprisonment imposed by the Court on February 12, 2024. **ECF No. 136**. The Court ordered the United States of America ("government") to respond to the defendant's motion by no later than March 15, 2024. **ECF No. 138**. The government complied and opposed. **ECF No. 139**.

To be entitled to release on bail pending appeal under the applicable law, Pérez-Otero must, among other things, establish that his appeal raises a substantial question of law or fact that, if decided in his favor, would likely result in the reversal of his conviction, a new trial, a sentence that does not include a term of imprisonment, or one reduced to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. But Pérez-Otero made little effort in his motion to identify and elaborate on the issues he will raise on appeal and how these meet the high bar established by law.

As explained below, while the Court finds that Pérez-Otero is neither likely to flee nor to pose a danger to the safety of another person or the community, and even though the Court considers that his appeal is not taken for purposes of delay, the Court concludes that Pérez-Otero has not established that the appeal raises a substantial question of law or fact that, if decided in his favor, is likely to result in reversal of his conviction, a new trial, a sentence that does not include a term of imprisonment, or one reduced to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. Accordingly, the Court **DENIES** defendants' motion.

## I.      Procedural Background

On December 8, 2021, a grand jury returned a three-count indictment against defendant Pérez-Otero, the former Mayor of the Municipality of Guaynabo, Puerto Rico ("Municipality"), on charges of conspiracy to commit federal program bribery (18 U.S.C. § 371), federal program bribery (18 U.S.C. § 666(a)(1)(B)), and extorsion under color of official right (18 U.S.C. § 1951). Indictment, **ECF No. 3**.

Count One charged Pérez-Otero with engaging in a conspiracy with unindicted co-conspirator Oscar Santamaría ("Santamaría"), spanning from on or about late 2019 to May 2021, to commit federal program bribery by accepting cash payments from the latter in exchange for awarding his company, Island Builders, municipal contracts as opportunities arose and prompt payment thereon. *Id.*, at 2-4. Count Two charged Pérez-Otero, a public official, with committing federal program bribery by accepting three $5,000 cash payments from Santamaría between

May 19 and August 19, 2021, with the intent of being influenced and rewarded in connection with municipal contracts. *Id.*, at 4-5. Lastly, Count Three charged that from late 2019 until in or about August 2021, Pérez-Otero committed extortion under color of official right by obtaining property from Santamaría, with his consent, that was not due to him or his office as mayor of Guaynabo. *Id.*, at 5-6. In plain terms, the United States of America ("government") charged Pérez-Otero with periodically receiving bribes from Santamaría in return for him providing useful information, providing benefits, or steering municipal contracts to Santamaría's companies and taking actions to assure prompt payment thereon.

Trial began on March 13, 2023. On March 22, 2023, after the close of the government's case-in-chief, Pérez-Otero made an oral Fed. R. Civ. P. 29(a) motion which the Court denied. Later that same day, a jury found Pérez-Otero guilty on all three counts. **ECF No. 102.** On April 5, 2023, Pérez-Otero filed a post-verdict motion for judgment of acquittal pursuant to Fed. R. Civ. P. 29(c). **ECF No. 106**. The Court denied Pérez-Otero's request in an Amended Opinion and Order dated February 8, 2024. *United States v. Pérez-Otero*, No. 21-CR-474 (ADC), 2024 WL 561858 (D.P.R. Feb. 8, 2024) (**ECF No. 127**).

On February 12, 2024, Pérez-Otero was sentenced by the Court to a term of imprisonment of 60 months as to Count One and 63 months as to Counts Two and Three, to be served concurrently with each other, as well as to a term of supervised release of three years as to each count, also to be served concurrently. Judgment, **ECF No. 131**. Pérez-Otero was allowed to surrender voluntarily and has been ordered to do so by March 26, 2024.

On March 6, 2024, Pérez-Otero filed his motion for release pending appeal. **ECF No. 136**. The government opposed on March 15, 2024. **ECF No. 139**.

## II.     Grounds Raised on Appeal

In his motion, Pérez-Otero puts forth at least two grounds that he will raise on appeal. First, that the sentencing guideline calculation the Court employed should have been based only on the $15,000 cash bribes "that the prosecution admitted and stated was the only specifically charged conduct, because the prosecution expressly recognized that the original $70,000 were political contributions." **ECF No. 136** at 2. Second, that the Supreme Court is expected to issue a decision in the case *Snyder v. United States,* No. 23-108, *cert. granted* 601 U.S. -- (S. Ct. Dec. 13, 2023) (Mem.), where it will decide whether 18 U.S.C. § 666(a)(1)(B) criminalizes gratuities, *i.e.*, payments in recognition of actions the government official has already taken or committed to take, without any quid pro quo agreement to take those actions. *Id.*, at 2-3. In addition, although not explicitly stated as a ground for appeal, Pérez-Otero makes a perfunctory reference to "numerous legal and factual issues [that] were vigorously contested" including "the prosecution disseminating evidence to the public which resulted in a biased jury."[1] *Id.*, at 6; *see also* Notice of Appeal, **ECF No. 134** (where Pérez-Otero vaguely refers to "the denial of various pretrial motions which infringed his rights (including but not limited to his constitutional right

---

[1] Although those issues are not identified, the record reflects that the main pre-trial issues raised by defendant were (a) a motion to dismiss the indictment based on its lack of allegations as to the existence of an explicit *quid pro quo*; and (b) a claim of presumed prejudice due to the adverse pre-trial publicity allegedly generated by the early dissemination of the evidence in question. *See* **ECF Nos. 30**, **41**, and **46**.

to a fair trial")"). Therefore, the Court will consider these legal and evidentiary determinations as a third ground for appeal.

### III.    Legal Standard

Release pending appeal is governed by 18 U.S.C. § 3143. *See* Fed. R. Crim. P. 46(c). This section essentially provides for the continued detention of a defendant convicted and sentenced to a term of imprisonment pending appeal. 18 U.S.C. § 3143(b). "[T]here is no presumption in favor of release pending appeal; on the contrary… detention (following conviction and sentencing) is mandatory unless the defendant can establish that one of the exceptions contained in the statute applies." *See United States v. Colón-Muñoz*, 292 F.3d 18, 20 (1st Cir. 2002). The burden of establishing that an exception applies rests squarely on the defendant. *United States v. Colón-Berríos*, 791 F.2d 211, 214 n.4 (1st Cir. 1986) ("In enacting § 3143, Congress placed the burden as to all elements bearing on whether to grant bail pending appeal on defendants.").

Under 18 U.S.C. § 3143(b)(1), a defendant must establish:

**(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

**(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
    **(i)** reversal,
    **(ii)** an order for a new trial,
    **(iii)** a sentence that does not include a term of imprisonment, or
    **(iv)** a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b).

With regards to the second prong, it itself can be divided into "two distinct requirements: (1) that the appeal raise a substantial question of law or fact and (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985).[2]

A "substantial question of law or fact" is one that is "a close question or one that very well could be decided the other way." *United States v. Zimny*, 857 F.3d 97, 100 (1st Cir. 2017) (citing *Bayko*, 774 F.2d at 523). This determination is to be made on a case-by-case basis, and the mere "possibility of reversal" is not enough to make a question a substantial one. *Bayko*, 774 F.2d at 523 ("The finding made by the district court was that there was 'a possibility of reversal.' This cannot mean 'a "close" question or one that very well could be decided the other way.'").

If the defendant is able to establish the existence of a substantial question, then the Court "proceeds on the assumption that the substantial question of law or fact 'is determined favorably to defendant on appeal.'" *Zimny*, 857 F.3d at 100-01 (citing *Bayko*, 774 F.2d at 522). Then, the question is limited to whether it is likely that such decision will result in one of the four outcomes listed in 18 U.S.C. § 3143(b)(1)(B). Whether this likelihood test is met depends on whether the error raised on appeal is harmless or not. *Bayko*, 774 F.2d at 523 ("…the language in

---

[2] The Court notes that the version of the statute cited in *Bayko* did not include language equivalent to 18 U.S.C. § 3143(b)(1)(B)(iii-iv).

the statue which reads 'likely to result in reversal or an order for a new trial' is a requirement that the claimed error not be harmless or unprejudicial.").

## IV.   Discussion

### A. Pérez-Otero is not likely to flee or pose a danger to the safety of another person or the community.

The Court begins by noting that Pérez-Otero has been free on bail since his arrest on December 9, 2021. *See* **ECF No. 8**. During the sentencing hearing held on February 12, 2024, the Court granted Pérez-Otero's request that he be allowed to surrender voluntarily because the charges against him were not violent crimes, he did not pose a threat to the community or the public, and he had so far complied with all of the conditions of supervised release while on bail. The Court sees no reason to vary its assessment. Moreover, the government concedes that Pérez-Otero "does not pose a danger to the community and is not a risk of flight." **ECF No. 139** at 4. The pre-sentence report prepared by the U.S. Probation Office is consistent with this conclusion. Because the government concedes the point and nothing has been brought to the Court's attention evincing that the circumstances have changed, the Court finds that Pérez-Otero meets the requirements of 18 U.S.C. § 3143(b)(1)(A).

### B. The appeal is not for purposes of delay.

Pérez-Otero states that his appeal is not taken for purposes of delay, but to contest the validity of his conviction. **ECF No. 136** at 6. Nothing more is argued with regards to this requirement. The government, for its part, does not address this element of section 3143(b)(1)(B)

in its response. Seeing no reason to find otherwise, the Court also finds that the appeal is not taken for purposes of delay.

> **C. The appeal does not raise a substantial question of law or fact which would likely result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or one reduced to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.**

As described above in Section II, *supra*, Pérez-Otero puts forth at least three grounds that he will raise on appeal. Whether any of these three grounds raise a substantial question of law or fact depends on how close the question is—that is, if the issue raised can very well be decided either way. *United States v. Zimny*, 857 F.3d at 100. The Court analyzes the "closeness" of each question raised by Pérez-Otero, as well as the likely effect of a favorable decision, separately.

> **1. The Court's sentencing calculation.**

Pérez-Otero argues that the Court erred in increasing the base offense level by six points by finding a loss amount in excess of $40,000 under U.S.S.G. § 2B1.1(b)(1)(D), applicable pursuant to U.S.S.G. § 2C1.1(b)(2). Pérez-Otero holds that the Court should not have considered any amount other than $15,000 in its sentencing calculation. Pérez-Otero asserts that a favorable determination by the Court of Appeals on this issue will result in one of the outcomes allowed for in section 3143(b)(1). However, because the question of whether the Court's sentencing calculation is supported by a preponderance of the evidence and because the Court would have imposed the same sentence under the 18 U.S.C. § 3553 factors, regardless of a different loss amount calculation, this ground for appeal does not raise a substantial question of law or fact that is likely to result in a favorable decision for Pérez-Otero.

First, Pérez-Otero was not only charged with receiving the $15,000 bribes charged in Count Two of the indictment—Pérez-Otero was also charged with conspiracy to commit federal program bribery in Count One and extorsion under color of official right in Count Three.[3] **ECF No. 3**. These latter counts comprised more extensive time periods than that of Count Two, going as far back as late 2019, and the testimony of Oscar Santamaría at trial showed that he made bribe payments to Pérez-Otero throughout 2019, 2020, and up to August 19, 2021. *See, generally, United States v. Perez-Otero*, No. 21-CR-474 (ADC), 2024 WL 561858, at *6-7 (D.P.R. Feb. 8, 2024) (**ECF No. 127** at 12-14) (section B.1, titled "The cash payments: how, when, and where" describing manner, timing, and frequency of Santamaría's bribe payments). In fact, Santamaría testified that he began to make payments to Pérez-Otero even before that, in late 2018 or early 2019. *See id.,* at *9 n. 18 (**ECF No. 127** at 19) (citing trial transcript of Santamaría's testimony). Thus, it is beyond dispute that the evidence showed that Pérez-Otero received cash bribes in addition to the $15,000 charged in Count Two, which the Court could consider when calculating his sentence. *See United States v. Akoto*, 61 F.4th 36, 45 (1st Cir. 2023) ("District courts have considerable discretion in determining what evidence should be regarded as reliable in making

---

[3] As detailed above, Count One charged Pérez-Otero with conspiracy to commit federal program bribery and encompassed the period from "on or about late 2019 to May 2021." **ECF No. 3** at 2-4. Count Two charged Pérez-Otero with federal program bribery in a time period "from on or about May 19, 2021, through on or about August 19, 2021." *Id.,* at 4-5. And Count Three charged extorsion under color of official right from "in or about late 2019 until in or about August 19, 2021." *Id.,* at 2-5. All three charges involved Pérez-Otero receiving cash payments from Santamaría with the intent of benefitting Santamaría and his companies through the award of municipal contracts and the performance of other official acts.

findings as to the amount of loss. And a district court's loss calculations need not be precise: the sentencing court need only make a reasonable estimate of the range of loss.") (cleaned up).

Second, during sentencing, the Court went into painstaking detail to describe how it determined the total amount received by Pérez-Otero in addition to the $15,000. The analysis was a conservative one based on the preponderance of the evidence presented at trial. The Court ultimately applied a scenario favorable to Pérez-Otero which actually excluded the $70,000 that he alleges should not have been considered.[4] Moreover, at times when the evidence on record was not entirely clear, the Court even took positions favorable to Pérez-Otero, such as when determining (1) the date when the payments commenced—January 1, 2019, when it could have very well been October 1, 2018, (i.e., "late 2018")—and (2) the frequency of the payments—in a five-week interval, instead of a possible four-week interval.[5] The Court's ultimate estimate was that the amount received by Pérez-Otero, counting the $15,000 but excluding the $70,000, exceeded more than $40,000 and was sufficient to justify a six-point enhancement under the specific offense characteristics of U.S.S.G. § 2B1.1(b)(1)(D).

---

[4] The U.S. Probation Office's pre-sentence report took the position that the $70,000 could be included in the loss amount calculation. *See* **ECF No. 132** at 19, n.6. If so, added to the Court's calculation of bribes other than the $15,000, the amount of loss would have warranted an eight-point enhancement under U.S.S.G. § 2B1.1(b)(1)(E), a scenario that the Court considered and rejected during sentencing. Thus, the Court's loss calculation actually operated in favor of Pérez-Otero.

[5] True, the Court rejected Pérez-Otero's claim that all the payments were campaign contributions and that only $15,000 should have been included in the loss calculation, but it did so because the preponderance of the evidence directly contradicted these claims.

For these reasons, Pérez-Otero's first ground of appeal does not present a substantial question of law or fact.

But even if it did, the Court does not find that a favorable decision on this question on appeal would benefit Pérez-Otero. When the Court pronounced Pérez-Otero's 63-month sentence, the Court referenced the sentencing factors under 18 U.S.C. § 3553 and clearly stated that, in imposing a sentence not harsher than necessary, it would have imposed the same sentence regardless of any other application of a specific offense characteristic or guideline sentence. In doing so, the Court mentioned that with regards to white collar crimes, the sentencing guidelines do not generally reflect the seriousness of the offenses nor the detrimental effect of such actions in the governmental function and the public trust. Nonetheless, it found that the guideline range here, which ranged from a minimum of 51 to a maximum of 63 months, properly reflected the seriousness of the offense and comported with the sentencing objectives as well as to defendant's characteristics and needs.

In addition, if the Court had used only the $15,000 to calculate the loss amount and applied only a two-point enhancement under U.S.S.G. § 2B1.1(b)(1)(B), the offense would have produced a total adjusted offense level of 20 and a guideline imprisonment range of 33 to 41 months.[6] That is, a sentence between 2 years, 9 months and 3 years, 7 months. Estimating that

---

[6] The computation would have been as follows: an initial base offense level of 14 (U.S.S.G. § 2C1.1(a)(1)), the addition of 2 points because the offense involved more than one bribe or extorsion (U.S.S.G § 2C1.1(b)(1)), 2 additional points based on a $15,000 loss (U.S.S.G. § 2B1.1(b)(1)(B)), plus 4 more points considering the involvement of an elected public official (U.S.S.G. § 2C1.1(b)(3)), and minus a 2-point deduction for being a zero-point offender (U.S.S.G. § 4C1.1). This analysis would have resulted in an adjusted offense level ("AOL") of 20.

Pérez-Otero's appeal may take approximately one or two years and that, to date, he has served no time in custody, that means that a favorable decision on appeal would not result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 2B1.1(b)(1)(D).

For these reasons, the Court also finds that there would be no harm or prejudice resulting from an error in the sentencing guideline calculation, and a favorable decision on appeal would not result in reversal, a new trial, a sentence that does not include a term of imprisonment, or one reduced to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

2.  **The pending Supreme Court ruling in *Snyder v. United States* on whether gratuities are criminalized under 18 U.S.C. § 666(a)(1)(B).**

As to Pérez-Otero's second ground for appeal, he argues that the outcome of *Snyder v. United States* could result "in a decision that would reverse" his conviction under 18 U.S.C. § 666(a)(1)(B), that is, his federal program bribery conviction under Count Two. **ECF No. 136** at 2-3. Not much else is said, but the Court takes Pérez-Otero to be arguing much the same as he did when he requested an indefinite stay of his sentencing hearing. *See* Motion to Stay Sentencing Hearing, **ECF No. 125.** There, much as he does here, "Pérez-Otero [did] not adequately explain, nor can the Court see, how the ultimate result of *Snyder* is likely to affect the outcome of his case, as he was found guilty of accepting bribes, not gratuities, and the evidence does not show otherwise." **ECF No. 128** at 2 (denying request to continue sentencing hearing *sine die* based on the same argument). For the benefit of the record, the Court repeats its reasoning.

As interpreted by the First Circuit in *United States v. Bravo-Fernández*, 722 F.3d 1 (1st Cir. 2013), a gratuity is not punishable 18 U.S.C. § 666(b)(1). *See* 722 F.3d at 6 ("[W]e conclude that § 666 does not criminalize gratuities."). Different from a bribe, a payment to a public official is a gratuity if it lacks a pre-existing *quid pro quo* agreement. *See United States v. Gracie*, 731 F.3d 1, 3 (1st Cir. 2013) ("The essential distinction between a bribe and a gratuity is that a bribe requires a quid pro quo, the exchange of something of value for influence over some official conduct of the recipient.") (citing *United States v. Mariano*, 983 F.2d 1150, 1159 (1st Cir. 1993)); *Bravo-Fernández*, 722 F.3d at 19 ("The core difference between a bribe and a gratuity is not the time the illegal payment is made, but the *quid pro quo,* or the agreement to exchange a thing of value for official action…. [T]he timing of the agreement to make or receive a payment may [provide a conclusive answer as to whether that payment is a bribe or a gratuity]: one cannot agree to perform an act in exchange for payment when that act has already been performed") (cleaned up).

The Court applied this interpretation in its Opinion and Order denying Pérez-Otero's motion for acquittal. See *United States v. Perez-Otero*, No. 21- CR-474 (ADC), 2024 WL 561858, at *15-16 (D.P.R. Feb. 8, 2024) (**ECF No. 127** at 35-38). As per the evidence presented at trial, the payments received by Pérez-Otero did not meet these requirements because (1) the jury could reasonably infer a pre-existing *quid pro quo* agreement between Santamaría and Pérez-Otero, and

(2) the bribe payments pre-dated the acts Pérez-Otero took in furtherance of that agreement and in favor of Santamaría, not the other way around.[7]

As the government points out in its response to Pérez-Otero's motion for release pending appeal, "the relief sought by petitioner Snyder in that case is for the U.S. Supreme Court to adopt the position that the First Circuit has already taken: namely, the decriminalization of gratuities under 18 U.S.C. § 666." **ECF No. 139** at 7. Thus, for Pérez-Otero, there are two foreseeable outcomes: The Supreme Court holds that a gratuity <u>is not</u> criminalized under 18 U.S.C. § 666, (as the First Circuit and this Court understand it) or holds that <u>it does</u>. If the former interpretation is adopted, then there is no change in Pérez-Otero's circumstances, as the Court has already applied that interpretation and found his arguments unavailing. If the latter

---

[7] In its Opinion and Order denying Pérez-Otero's motion for acquittal, the Court summarized the evidence as follows:

> First… there was ample evidence for the jury to conclude that a *quid pro quo* agreement existed between Santamaría and Pérez-Otero, that Santamaría made the cash payments with the intent to influence Pérez-Otero, and that Pérez-Otero surreptitiously received them with the intent to be influenced in relation to municipal contracts…. Second… the jury could have reasonably concluded that the agreement between Santamaría and Pérez-Otero dated back to when Santamaría first approached Pérez-Otero and began making the cash payments in late 2018 or early 2019. Island Builders was awarded its contract with the Municipality later, in March of 2020. Thus, the agreement clearly preceded the bribes…. Third… Pérez-Otero alerted Santamaría on August 27, 2021, of the need to send an Island Builders representative to the pre-proposal meeting in order to get the third amendment to the Río Ward contract, which was awarded in October of that same year. Pérez-Otero, most notably, took concrete action to get the Municipality to release the $440,784.91 payment to Island Builders on August 20, 2021. All three cash payments charged in Count Two preceded these two acts, so, by Pérez-Otero's own logic, they cannot be classified as after-the-fact gratuities…. Lastly, the bribes paid by Santamaría to Pérez-Otero to either regain his trust after the 2017 elections and later to ensure the award of contracts, were periodic and ongoing since late 2018 or early 2019, so isolating any one payment as after-the-fact gratuities ignores the existence of the agreement and the established pattern of conduct of periodic cash payments in exchange for benefits.

*United States v. Perez-Otero*, No. 21-CR-474 (ADC), 2024 WL 561858, at *15-16 (D.P.R. Feb. 8, 2024) (**ECF No. 127** at 36-37).

interpretation prevails, then gratuities would be criminalized under 18 U.S.C. § 666(a)(1)(B)—

an outcome which in no way benefits Pérez-Otero's theory that the bribes were gratuities. *See*

Motion for Judgment of Acquittal, **ECF No. 106** at 12-13.

In sum, even if Pérez-Otero's gratuity argument presented a close question of fact or law

(which in the Court's view, it does not), a favorable decision would not be likely to result in

reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or

one reduced to a term of imprisonment less than the total of the time already served plus the

expected duration of the appeal process.

> **3. The Court's decision not to dismiss the indictment and to refuse to find presumed prejudice due to adverse pre-trial publicity.**

Finally, although stated ambiguously, Pérez-Otero raised the Court's denial of several

pre-trial motions as a ground for appeal. *See* **ECF No. 136** at 6 ("numerous legal and factual

issues [that] were vigorously contested" including "the prosecution disseminating evidence to

the public which resulted in a biased jury."); *see also* Notice of Appeal, **ECF No. 134** (referring to

"the denial of various pretrial motions which infringed his rights (including but not limited to

his constitutional right to a fair trial)"). Even though this vague reference borders the

unintelligibility, the government in its opposition identified and discussed two distinct

questions raised by Pérez-Otero before trial, namely: (1) a motion to dismiss the indictment

based on its lack of allegations as to the existence of an explicit *quid pro quo* (**ECF No. 30**); and

(2) a claim of jury bias due to the government's dissemination of evidence (**ECF No. 46**). *See* **ECF**

**No. 139** at 4, n.2. The Court will accept the government's formulation of the first ground but will

reformulate the second as a claim of presumed prejudice due to the adverse pre-trial publicity allegedly generated by the early dissemination of the evidence in question.[8]

### a)  The decision not to dismiss the indictment.

As to the motion to dismiss the indictment, the Court is of the view that the question presented in that motion is not a substantial one. Pérez-Otero argued in his motion to dismiss that the government had failed to allege the existence of an explicit *quid pro quo* agreement between him and Santamaría involving the payment of bribes in the form of political campaign contributions in exchange for municipal contracts, as required by *McCormick v. United States*, 500 U.S. 257 (1991). Pérez-Otero relied extensively on a district judge's opinion in *United States v. Benjamin*, 21-CR-706 (JPO), 2022 WL 17417038 (S.D.N.Y. Dec. 5, 2022), where that court dismissed an indictment charging a public official with, among other things, federal funds bribery involving the receipt of campaign contributions because it failed to allege that the agreement was explicit enough under *McCormick*. *See* **ECF No. 30** at 2; *see also* **ECF No. 65** at 7 (describing the indictment in *Benjamin*). The Court distinguished the reasoning in *McCormick* and *Benjamin* by highlighting that the indictment against Pérez-Otero charged him with receiving cash payments from Santamaría, not campaign contributions, and the Court also considered it improper to dismiss an indictment that adequately tracked the statutory elements

---

[8] Because Pérez-Otero made little to no effort at further identifying these grounds, any additional argument that he wished to have considered in his motion for release is waived as undeveloped. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived…. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

of the charged crimes based on Pérez-Otero's "one-sided appreciation of the strength of the evidence against him." **ECF No. 65** at 8-11. The occurrence of the trial and the passing of time have only solidified this conclusion.

First, the Court takes note that the Second Circuit recently reversed the decision in *Benjamin* on which Pérez-Otero relied for his substantive position. See *United States v. Benjamin*, No. 22-3091, 2024 WL 995569 (2d Cir. Mar. 8, 2024). In doing so, the Second Circuit joined other circuit courts of appeal (including the First) in holding that "the *McCormick* explicit *quid pro quo* requirement may be met by implication from the official's and the payor's words and actions and need not entail an express statement." *Id.*, at *5 (citing, among others, *United States v. Correia*, 55 F.4th 12, 31 (1st Cir. 2022)).

Second, the government at trial presented enough evidence for a reasonable jury to conclude that Pérez-Otero did not receive campaign contributions from Santamaría, as the alleged campaign debt that the latter was supposed to be paying seemed to not have existed at all. *See, generally, United States v. Perez-Otero*, No. 21-CR-474 (ADC), 2024 WL 561858, at *7-9 (D.P.R. Feb. 8, 2024) (**ECF No. 127** at 14-20) (section B.2, titled "Evidence that the cash payments were *not* political campaign contributions" describing evidence that Pérez-Otero did treat the bribe payments as campaign contributions). This evidence consisted of testimony of and documents produced by public officials from the Commonwealth of Puerto Rico's Office of the Electoral Comptroller as well as the Government Ethics Office. They showed that neither Pérez-Otero nor his campaign committee ever reported the cash payments or bribes he received from

Santamaría, despite being aware of the reporting requirements for cash campaign contributions.

In denying Pérez-Otero's post-verdict motion for acquittal, the Court summed up the evidence

as follows:

> Santamaría may have genuinely thought that he was helping Pérez-Otero pay a
> $70,000 campaign debt, but the evidence points to there being no campaign debt.
> There is no evidence that Pérez-Otero ever delivered the cash payments he
> received from Santamaría to his campaign committee, as required by law. Neither
> is there any evidence that he used those funds for campaign expenses. And
> importantly, Santamaría himself testified that he finished paying the supposed
> campaign debt but kept making the secret cash payments, meaning that he did not
> intend those "post-debt" payments to be campaign contributions.

*United States v. Perez-Otero*, No. 21-CR-474 (ADC), 2024 WL 561858, at *9 (D.P.R. Feb. 8, 2024)

**(ECF No. 127** at 19).

Third, the government also presented sufficient evidence for a reasonable jury to

conclude that a *quid pro quo* agreement existed between Pérez-Otero and Santamaría. *See*,

*generally*, *id.*, at *9-13 (section C, "The *quid pro quo*: whether the evidence supports the existence

of an agreement" describing the mechanics of the agreement between Pérez-Otero and

Santamaría through their words, actions, and other conduct) (**ECF No. 127** at 20-29). That

evidence included, but was not limited to: (1) Santamaría's testimony about the initial

discussions between him and Pérez-Otero about which municipal contracts were available for

Santamaría's companies; (2) discussions between the two (recorded by the FBI) about the timing

of the announcements of new requests for proposals and inside information on the processes;

(3) Santamaría's testimony and recorded conversations asking Pérez-Otero to resolve problems

arising between his construction company, Island Builders, and the Municipality, including

contract negotiations and the release of payments; (4) corroborating testimony from the

president of Island Builders, Carlos De Jesús-Pagán, as to how those problems were resolved

after telling Santamaría about them, who in turn brought the issues to Pérez-Otero's attention;

and (5) video surveillance of Santamaría handing over his cash payments to Pérez-Otero in a

manner that strongly suggested a pre-existing agreement. For the sake of brevity, the Court will

not restate in detail the evidence here, but simply refer to its summary of its effect on a

reasonable juror:

> The totality of the evidence here is sufficient to support a finding that Pérez-Otero
> received and accepted $5,000 cash payments from Santamaría since late 2018 or
> early 2019 with the intent of being influenced in relation to his office, and that
> Santamaría gave Pérez-Otero these payments with the intention of obtaining
> favorable treatment in his efforts to obtain municipal contracts with the
> Municipality of Guaynabo and prompt payment thereon. Consistent therewith, as
> testified by Santamaría, within a few months of starting to make the payment, he
> initiated conversations with Pérez-Otero about possible contracts being awarded
> to his companies. This *quid pro quo* agreement is reflected not only in Santamaría's
> testimony of his expectations of the agreement, which the jury was entitle to credit,
> but also in the supporting evidence submitted by the government that showed or
> implied that Pérez-Otero acted in accordance with these expectations. Therefore,
> the jury was more than justified in concluding that there existed a *quid pro quo*
> agreement between Santamaría and Pérez-Otero wherein the former would
> periodically pay the latter $5,000 for his assistance, as mayor, in obtaining
> municipal contracts in his Municipality as opportunities arose, and for prompt
> payment thereon, as charged.

*Id.*, at *13 (**ECF No. 127** at 28-29).

As the Court previously put it: "With all of the above evidence laid out, could a

reasonable jury conclude that a *quid pro quo* agreement existed between Santamaría and Pérez-

Otero? The answer, in this Court's view, is a resounding yes." *Id.*, at *12 (**ECF No. 127** at 27).

Therefore, a review of the questions presented in Pérez-Otero's pre-trial motion to dismiss and of the weight of evidence presented at trial moves the Court to find that there is no substantial question of either law or fact regarding whether *McCormick's* explicitness standard applied or whether the evidence supported a finding that a *quid pro quo* agreement existed. Were any of these questions considered "substantial," then a favorable ruling on appeal to Pérez-Otero would likely result in one of the outcomes provided for in 18 U.S.C. § 3143(b)(1)(B). But because the Court concludes they are not, Pérez-Otero is entitled to no relief.

### b) The decision to reject a claim of presumed prejudice due to pre-trial publicity generated by early dissemination of government's evidence.

Pérez-Otero's other nebulous ground for appeal involves dual pre-trail requests for continuance of trial and for the exclusion of certain evidence based on his claim that the government had publicly used two photographs on the same date of his arrest and bail hearing in a manner that created a presumption of prejudice due to pre-trial publicity. *See* Motion Regarding Adverse Pretrial Publicity, **ECF No. 41**; Motion In Limine, **ECF No. 46**. Pérez-Otero had complained of the government's use in a press conference on the same day of his arrest and bail hearing; of two photographs (in reality, excerpts from a surveillance video) showing him receiving a stuffed white envelope which the government contended held $5,000 in cash.[9] **ECF No. 41** at 5. Pérez-Otero claimed that the use of such photographs was improper, that it caused

---

[9] The photographs were included as an attachment to a government's motion requesting the imposition of a $150,000 bond. When so filed, the case was sealed. Nonetheless, early on the date of arrest, the government had moved for the unsealing of the case. **ECF Nos. 1**, **6**.

adverse pre-trial publicity, and that the evidence should have been excluded for that reason.

**ECF No. 46** at 6-8.

The Court recalls that it dispensed with Pérez-Otero's requests in a comprehensive Opinion & Order dated March 8, 2023. *See United States v. Perez-Otero*, No. 21-CR-474 (ADC), 2023 WL 2401932 (D.P.R. Mar. 8, 2023); (**ECF No. 74**). But before March 2023, it issued a standard pre-trial protective order limiting public communications about the case by the parties and related persons, based on Pérez-Otero's motions **ECF No. 50**. And while the Court stated that it would deal with the merits both of Pérez-Otero's motions separately, the Court contextualized the government's use of those pictures on which Pérez-Otero's claims were based:

> Importantly, the photographs were included as part of the government's motion filed on December 9, 2021, for a (higher) bond of $50,000 in addition to the standard conditions of release. **ECF No. 6**. Specifically, the government submitted the photographs to support "the weight of the evidence" against defendant, one of 18 U.S.C. § 3142(g)(2)'s factors. *Id.* Indeed, the government proffered they had evidence in the form of audio and video recording, photographs, and documents showing that defendant carried out the conduct charged in the indictment. The photographs were attached thereto as "extracts from some of the evidence… for the Court's consideration." **ECF No. 6** at 5. Moreover, defendant argues that the government submitted such evidence without a prior ruling on its admissibility. Defendant's argument also overlooks the fact that the Federal Rules of Evidence do not apply at the stage where the government made its filing at **ECF No. 6**. *See, generally, U.S. v. Acevedo-Ramos*, 755 F.2d 203, 207 (1st Cir. 1985)("Congress did not intend to forbid the judicial officer to rely upon investigatory descriptions of evidence []and similar hearsay[] where the judicial officer reasonably concludes that those descriptions, reports, and similar evidence, in the particular circumstances of the hearing, are reliable.").

*Id.*, at 1, n. 1. Notably, the Court premised the order by stating its "baffle[ment] by defendant's untimeliness" because he "waited more than a year to complain about" the government's

allegedly improper use of the photographs. *See* **ECF No. 50** at 2. It also pointed out that Pérez-Otero "failed to point to a single instance in which the government has made any public statement about this case after December 2021." *Id.*

Later, in the March 8, 2023, Opinion and Order, the Court analyzed the applicable precedents governing adverse pre-trial publicity as well as Pérez-Otero's attempt at establishing a presumption of prejudice. It found Pérez-Otero's arguments and evidentiary support for a claim of presumed prejudice wholly lacking in substance. *United States v. Perez-Otero*, No. 21-CR-474 (ADC), 2023 WL 2401932, at *11-12 (D.P.R. Mar. 8, 2023); (**ECF No. 74** at 25). Pérez-Otero's claim of presumed prejudice fell way below the standard applied by the First Circuit and the Supreme Court, particularly in cases of public corruption. *See*, *generally*, *id.*, at *7-10 (**ECF No. 74** at 14-22). Moreover, the Court reaffirmed its finding that Pérez-Otero had delayed for over a year in moving to challenge any alleged prejudice arising from the government's use of the photographs. *Id.*, at *12 (**ECF No. 74** at 25) ("Even if all of the above discussion on the lack of merit of his presumed prejudice claim were to be ignored, his lack of diligence is enough to convince this Court that the request for a continuance solely based on the public's awareness of the photographs in question is untimely.").

As to the government's use of the photographs in particular, the Court restated the previously noted context in which the government utilized the photographs. *Id.*, at *2, n. 4 (**ECF No. 74** at 4, n. 4) ("The Court notes that the government used these photographs in the context of a motion filed pursuant to 18 U.S.C. § 3142(g), it having a duty to support its position

regarding bail. Pérez-Otero does not cite to any statute or rule that requires the government to file this evidence under seal or restriction, nor indicates what precluded the defense from requesting the sealing or restriction of public access to such photographs."). Such photographs were, therefore, part of the public record and stayed as such for more than a year given Pérez-Otero's failure to act to limit public access. More so, the Court noted that the examples of alleged adverse pre-trial publicity put forth by Pérez-Otero were in no small part caused by his own actions, including the filing of a motion to dismiss and his counsel's numerous appearances in local media discussing case filings and defense theories. *See United States v. Pérez-Otero*, No. 21-CR-474 (ADC), 2023 WL 2401932, at *3 (D.P.R. Mar. 8, 2023) (**ECF No. 74** at 5).[10]

The Court does not consider that the matters decided in the March 8, 2023, Opinion and Order raised a substantial question of law or fact. Were this question a "substantial" one, then a favorable ruling on appeal to Pérez-Otero would likely result in a new trial, one of the outcomes provided for in 18 U.S.C. § 3143(b)(1)(B). *See United States v. Casellas-Toro*, 807 F.3d 380 (1st Cir. 2015) (reversing conviction due finding of a presumption of prejudice because of adverse pre-trial publicity and remanding for, *inter alia*, a new trial). But because the Court concludes it is not, Pérez-Otero is entitled to no relief. As then stated by the Court, "Pérez-Otero failed (by a wide margin) to establish a presumption of prejudice with regard to the alleged pretrial publicity surrounding his case…. Pérez-Otero has failed to establish that the complained-of publicity is

---

[10] The Court recalls that these actions prompted the issuance of the protective order (**ECF No. 50**), and yet that was not enough of a deterrence as Pérez-Otero and one of his attorneys again spoke to the media about the case in violation of the protective order. *See* **ECF No. 96**.

both extensive and sensational enough to warrant such presumption." *Id.*, at *4 (**ECF No. 74** at

8). Pérez-Otero's perfunctory argument at this stage offers no reason for the Court to vary its

conclusion.[11]

**V.      Conclusion**

      Pérez-Otero's request for release pending appeal is **DENIED**. The defendant has not

shown that his appeal presents a substantial question of law or fact "likely to result in reversal

or an order for a new trial of all counts on which imprisonment has been imposed." *Bayko*, 774

F.2d at 522. Therefore, he has not met the burden of establishing his entitlement to relief under

18 U.S.C. § 3143(b)(1).

      **SO ORDERED**.

      At San Juan, Puerto Rico, on this 21st day of March, 2024.

                              **S/AIDA M. DELGADO-COLÓN**
                              **United States District Judge**

---

[11] "As is evident from this Court's survey [of case law involving claims of adverse pre-trial publicity], stronger, more robust showings of pretrial publicity in public corruption cases have been denied as falling below the threshold necessary to presume prejudice. This shows that any claims of adverse pretrial publicity in the case at bar, as presented by Pérez-Otero, are vague, not supported by evidence, and do not warrant a finding of presumption of prejudice. There is no reason for this Court to depart from this consensus to make an exception for Pérez-Otero. Moreover, the Court cannot overlook the fact that Pérez-Otero has failed to justify bringing this matter to the Court's attention more than a year after the photographs in question were filed. He has also failed to justify his failure to move to restrict public access to the photographs at any point between then and now. Even if all of the above discussion on the lack of merit of his presumed prejudice claim were to be ignored, his lack of diligence is enough to convince this Court that the request for a continuance solely based on the public's awareness of the photographs in question is untimely. The Court thus finds that Pérez-Otero has failed to establish that the use by the media of the complained-of photographs presents one of those extreme cases where 'there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial.' *See*, *Nebraska*, 427 U.S. at 553 (*quoting Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966))." *United States v. Perez-Otero*, No. 21-CR-474 (ADC), 2023 WL 2401932, at *12 (D.P.R. Mar. 8, 2023); **ECF No. 74** at 25-26.